1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   JOSE TRUJILLO,                                  )  Case No.: 1:21-cv-0058 JLT BAM
                                                      )
12              Plaintiff,                            )  ORDER DENYING PLAINTIFF'S MOTION FOR
                                                      )  SUMMARY JUDGMENT
13         v.                                         )
                                                      )  (Doc. 24)
14   H&S LBSE INC. dba 7-ELEVEN #22736G,             )
     et al.,                                          )  ORDER DECLINING SUPPLEMENTAL
15                                                    )  JURISDICTION AND DISMISSING PLAINTIFF'S
                Defendants.                           )  STATE LAW CLAIMS WITHOUT PREJUDICE
16   _____        )

17        Jose Trujillo asserts he is disabled as defined by the Americans with Disabilities Act.  He

18   contends H&S LBSE Inc., doing business as 7-Eleven #22736G, and 7-Eleven, Inc., violated federal

19   and California disability access laws by not having accessible features at a store located in Los Banos,

20   California.  (*See generally* Doc. 14.)  Plaintiff seeks summary judgment on his claims pursuant to Rule

21   56 of the Federal Rules of Civil Procedure, asserting he is entitled to injunctive relief under the ADA

22   and statutory damages under the Unruh Act.  (Doc. 24.)  Defendants oppose summary judgment,

23   asserting Plaintiff fails to carry his burdens as the moving party.  (Doc. 26.)

24        For the reasons set forth below, the motion for summary judgment is **DENIED**.  In addition, the

25   Court now declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are

26   **DISMISSED** without prejudice.

27   ///

28

                                                    1

1    **I.    Background[1]**

2         Plaintiff visited the 7-Eleven located at 603A Pacheco Boulevard in Los Banos, California, on

3    October 22, 2018; January 1, 2020; and October 13, 2020.  (JSF 2, 5.)  The 7-Eleven "is a gas station

4    and convenience store open to the public."  (JSF 3.)  The real property on which the store is located is

5    owned by 7-Eleven, Inc., and H&S LBSE Inc. operates the store.  (JSF 2, 4.)

6         Plaintiff asserts he is "'physically disabled' as defined by appliable California and United States

7    laws."  (Doc. 14 at 2, ¶ 8 [FAC].)  He alleges that he personally encountered barriers "that interfered

8    with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and

9    accommodations offered" at the 7-Eleven, including: having to pump his own gas without assistance;

10    an access ramp being only "located near the sole designated accessible parking stall," which required

11    him "to travel a long distance to reach it from the gas pumps;" uneven asphalt on the ramp; an entrance

12    door that was "heavy and difficult" to open; narrow aisles that "makes it hard for Plaintiff to maneuver

13    when using his wheelchair;" food in a warming unit that was difficult to see; and a "transaction counter

14    … regularly cluttered with merchandise that is hard for Plaintiff to reach over when conducting his

15    transaction."  (*Id.* at 2-3, ¶ 10(a)-(h).)  Plaintiff alleged that after initiating this action, he became

16    "aware of" additional barriers at the 7-Eleven that "relate to his disabilities."  (*Id.* at 4, ¶ 11; *see also*

17    Doc. 1 at 3, ¶ 11 (indicating the above barriers in Paragraph 10 are those Plaintiff "personally

18    encountered" and an amended complaint would be filed "once additional barriers are identified").

19    Plaintiff asserts that he "was, and continues to be, deterred from visiting" the 7-Eleven, because he

20    knows that its "goods, services, facilities, privileges, advantages, and accommodations were and are

21    unavailable to Plaintiff due to [his] physical disabilities."  (*Id.* at 7, ¶ 12.)  However, Plaintiff asserts he

22    will return "once the barriers are removed."  (*Id.*)

23         In the first amended complaint, Plaintiff seeks to hold Defendants liable for violating: (1) Title

24    III of the Americans with Disabilities Act of 1990; (2) California's Unruh Act, Cal. Civ. Code § 51;

25    and (3) California's Health & Safety Code.  (*See* Doc. 14 at 8-12.)  Plaintiff now seeks summary

26

27    ───────────────────────

28    [1] The Court's summary of the background includes the limited undisputed facts the parties identified in the Joint Statement of Undisputed Facts (designated "JSF") and Plaintiff's allegations.  (*See* Doc. 24-2 [the joint statement] and Doc. 14 [Plaintiff's first amended complaint].)

1    judgment on each of his claims.  (Doc. 24.)  Defendants oppose summary judgment, asserting Plaintiff

2    fails to identify evidence to support a conclusion that Plaintiff has standing for his claim under the

3    ADA.  (Doc. 26 at 8-11.)  In addition, Defendants contend questions of fact—including whether

4    Plaintiff is disabled—preclude summary judgment. (*Id.* at 11-18.)  In reply, Plaintiff argues he carries

5    the burden to show that he "is substantially limited in his ability to walk, and qualifies as disabled

6    under the ADA."[2]  (Doc. 27 at 5.)

7    **II.    Legal Standards for Summary Judgment**

8          Summary judgment is appropriate when there is "no genuine dispute as to any material fact and

9    the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, Rule 56

10   allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine

11   issue of material fact as to a particular claim or portion of that claim.  *Id.*; *see also Lies v. Farrell*

12   *Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that

13   will often fall short of a final determination, even of a single claim…") (internal quotation marks,

14   citation omitted).

15         The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to

16   see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,

17   475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment, or summary adjudication of a claim,

18   should be entered "after adequate time for discovery and upon motion, against a party who fails to

19

20   [2] Plaintiff submitted new evidence with his reply, including medical records and supplemental declarations.  Plaintiff asserts
     he "only recently obtained [his] full medical records… since he had no reason to believe Defendants would produce any
21   evidence to try to challenge [his] disability." (Doc. 27-1 at 4, Trujillo Supp. Decl. ¶ 4.) However, as discussed below,
     *Plaintiff* has the burden to present evidence to support standing and the elements of his claims—including disability—as the
22   moving party. Because disability is "the first element of [an] ADA claim," *Hall v. City of Weed*, 2021 WL 4078031 (E.D.
     Cal. Sept. 8, 2021), Plaintiff should have been aware of his need to present such evidence.  *See Center for Biological
23   Diversity v. Export-Import Bank of the U.S.,* 894 F.3d 1005, 1012 (9th Cir. 2018) ("at the summary judgment stage, a
     plaintiff must offer evidence and specific facts demonstrating each element").  Under such circumstances, evidence in reply
24   should not be permitted or considered.  *See Baltzer v. Midland Credit Mgmt., Inc*., 2014 WL 3845449, at *1 (S.D. Fla. Aug.
     5, 2014) ("A reply memorandum may not raise new… evidence, particularly where the evidence was available when the
25   underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence").
          Moreover, although Defendants filed evidentiary objections, Defendants were deprived of the opportunity to
26   present argument related to the evidence filed with Plaintiff's reply.  For this reason as well, the evidence submitted in reply
     should not be considered.  *See Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir. 1996) (indicating evidence in reply may be
27   considered if the district court first gives the opposing party the opportunity to respond).  Accordingly, the Court declines to
     consider Plaintiff's reply evidence.  *See id.*; *see also Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, 2014 WL
28   6603761 at *10 n.45 (C.D. Cal. July 28, 2014) ("It is well established that new … evidence presented for the first time in
     Reply [is] waived") (citation omitted).

1    make a showing sufficient to establish the existence of an element essential to that party's case, and on

2    which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

3    (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine

4    issue of material fact.  *Id.,* 477 U.S. at 323.  An issue of fact is genuine only if there is sufficient

5    evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it

6    "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

7    U.S. 242, 248 (1986); *see also Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

8    A party demonstrates summary adjudication is appropriate by "informing the district court of the basis

9    of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

10   and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a

11   genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

12       If the moving party meets its initial burden, the burden then shifts to the opposing party to

13   present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e);

14   *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some

15   metaphysical doubt as to the material facts." *Id.* at 587.  The party is required to tender evidence of

16   specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention

17   that a factual dispute exits.  *Id.* at 586 n.11; Fed. R. Civ. P. 56(c).  Further, the opposing party is not

18   required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed

19   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth

20   at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.

21   1987).  However, "failure of proof concerning an essential element of the nonmoving party's case

22   necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

23       The Court must apply standards consistent with Rule 56 to determine whether the moving

24   party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of

25   law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary

26   judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285

27   F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854

28   F.2d 1179, 1181 (9th Cir. 1988)).  Further, evidence must be viewed "in the light most favorable to the

1   nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.

2   *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

3   **III.    Evidentiary Objections**

4       The parties made extensive evidentiary objections to the evidence presented in support of, and

5   in opposition to, the pending motion.  The Court declines to address each objection individually.

6   Nevertheless, the Court notes that when evaluating a motion for summary judgment, a court "cannot

7   rely on irrelevant facts, and thus relevance objections are redundant."  *Burch v. Regents of the Univ. of*

8   *Cal.,* 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  In addition, "improper legal conclusions ... are not

9   facts and likewise will not be considered on a motion for summary judgment."  *Id.*

10       In the analysis below, the Court relies only upon any evidence that may be presented in an

11   admissible form at trial in evaluating the merits of the motion for summary judgment.  *See* Fed. R. Civ.

12   P. 56(c)(2); *see also Sali Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) ("the court must

13   review the evidence in light of what would be admissible before either the court or jury" [citation

14   omitted]); *Burch*, 433 F. Supp. 2d at 1119-1120 (even if evidence is presented in a form that is

15   currently inadmissible, it may be considered on a motion for summary judgment so long as the

16   admissibility defects could be cured at trial).  Toward that end, the objections to any evidence cited

17   below—particularly as to objections related to admissibility— are overruled.

18   **IV.    Discussion and Analysis**

19       Plaintiff moves for summary judgment on his claims arising under federal and state disability

20   access laws, including: (1) Title III of the Americans with Disabilities Act of 1990; (2) California's

21   Unruh Act, Cal. Civ. Code § 51; and (3) California's Health & Safety Code.  (Docs. 14, 24-1.)

22   Defendants contend the motion must be denied because Plaintiff fails to show standing and there are

23   disputes of material fact, including as to Plaintiff's disability.  (*See generally* Doc. 26 at 8-18.)

24       **A.    Disability under the ADA**

25       The ADA prohibits discrimination on the basis of disability. 42 U.S.C. § 12182(a); *Lopez v.*

26   *Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020) (observing that the ADA was

27   enacted "to address discrimination against individuals with disabilities").  To sustain a claim under the

28   ADA, a plaintiff is required to "first demonstrate a qualifying disability." *Davis v. Ma*, 848 F. Supp. 2d

1   1105, 1113 (C.D. Cal. 2012), citing 42 U.S.C. § 12102(2)(A); *see also Lopez*, 974 F.3d at 1033

2   (observing that to prevail on a Title III discrimination claim, and plaintiff "must establish that… he is

3   disabled within the meaning of the ADA"). The ADA defines a disability as including:

> (A) a physical or mental impairment that substantially limits one or more
> of the major life activities of such individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such impairment.

8   42 U.S.C. § 12102(1)(A)-(C).  Thus, a plaintiff proceeding under Section 12102(1)(A)—also known as

9   "the actual disability prong" must identify a substantially limited major life activity.  *See Nunies v. HIE*

10  *Holding, Inc.*, 908 F.3d 428, 436 (9th Cir. 2018).  Pursuant to the ADA, "major life activities include,

11  but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

12  walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking,

13  communicating, and working."  42 U.S.C. § 12102(2)(A).

14        Plaintiff asserts that he is "'physically disabled' as defined by appliable California and United

15  States laws."  (Doc. 14 at 2, ¶ 8 [FAC].)  In seeking summary judgment, Plaintiff submits a declaration

16  in which he states: "Among other ailments, I suffer from deficiency of Protein C and S, which are

17  blood anticoagulants. I have had recurrent deep vein thrombosis (blood clots) and post-thrombotic

18  venous insufficiency, which in turn causes open wounds on my legs called venous stasis ulcers. My

19  symptoms include pain, loss of feeling, leg weakness, and muscle degeneration."  (Doc. 24-8 at 1,

20  Trujillo Decl. ¶ 2.)  In support of these assertions, Plaintiff submits a "a portion of [his] medical

21  record," which is an email with the subject "Health Record from FollowMyHeath®."  (*Id.* ¶ 3; Doc. 24-

22  9 at 2.)  This email, dated November 3, 2021, includes a list of diagnoses, allergies, and medications.

23  (Doc. 24-9 at 2-4.)  Plaintiff also reports, "I have been issued a disabled person's parking placard by the

24  California Department of Motor Vehicles," which indicates an expiration date of June 30, 2023.  (Doc.

25  24-8 at 2, Decl. ¶ 8; *see also* Trujillo Decl. Exh. E [Doc. 24-9 at 12].)

26        Significantly, when an ADA plaintiff is the moving party for summary judgment, a self-serving

27  declaration identifying impairments and symptoms is insufficient to establish disability under the ADA,

28  particularly when the reported impairments "are not easily understandable by a lay person."  *Core v.*

1    *Casino Center LLC*, 2020 WL 10503190, at \*3 (C.D. Cal. Dec. 22, 2020); *see also Moralez v. Wal-*

2    *Mart Stores, Inc.*, 2018 WL 5458767, at \*2 (N.D. Cal. Oct. 28, 2018).

3            For example, in *Moralez v. Wal-Mart*, the plaintiff asserted that Wal-Mart violated her rights

4    under the ADA and California's Unruh Civil Rights Act, and moved for summary judgment on her

5    claims. *Id.*, 2018 WL 5458767, at \*1.  The court observed that Moralez claimed she had "a physical

6    impairment — rheumatoid arthritis — that substantially limits her dexterity and ability to walk." *Id.*, at

7    \*2. However, the only evidence Moralez submitted in support of her motion was "her own self-serving

8    declaration," in which Moralez stated she "she suffers from rheumatoid arthritis, cannot walk or stand

9    in a meaningful manner, and uses a power wheelchair."  *Id.* (internal quotation marks omitted).  In

10   addition, Moralez reported that "her arthritis causes pain and weakness in her fingers and hands, which

11   'substantially limits her dexterity." *Id.* (modifications adopted).  The court found that "[a]bsent from

12   the record is any corroborating evidence such as medical records."  *Id.*  Although Moralez reported that

13   "the California Department of Motor Vehicles has issued her a 'permanent disabled person's license

14   plate,' she fail[ed] to offer documentation to support this claim."  *Id.* The Northern District determined

15   that the assertions in Moralez's declaration were "insufficient to carry her burden on summary

16   judgment."  *Id.*  Therefore, the court declined the plaintiff's motion for summary judgment. *Id.* at \*2-3.

17           Similar circumstances were addressed by the Central District in *Core*.  The plaintiff, seeking

18   summary judgment on a claim under the ADA, "declare[d] her connective tissue order and vascular

19   issues, in addition to her osteoporosis, osteoarthritis, and cataracts, render her disabled as it is difficult

20   for her to walk and stand."  *Id.*, 2020 WL 10503190, at \*3 (C.D. Cal. Dec. 22, 2020).  In addition, Core

21   reported "she has daily pain, but the severity can vary, and whether she uses a cane or walker depends

22   on the severity of the pain that day."  *Id.*  Core also reported she was "issued a disabled person parking

23   placard," though the Court noted she did not "offer documentation to support this claim."  *Id.*  The

24   court observed that  "[a]bsent from the record is any corroborating evidence such as medical records."

25   *Id.*  The court noted determined Core failed to carry the burden to establish she has a disability, because

26   her "conditions require diagnosis and — especially in relation to the Marfan-related unspecified

27   connective tissue disorder — are not easily understandable by a lay person."  *Id.* at \*4. Accordingly, the

28   Central District denied Core's motion for summary judgment. *Id.*

1    Likewise, here, Plaintiff relies primarily upon a self-serving, conclusory declaration to support

2    his motion. Plaintiff does not present any medical records of his diagnoses or conditions, particularly

3    at the times he visited the 7-Eleven on October 22, 2018; January 1, 2020; and October 13, 2020.  His

4    declaration is written in the present sense, as he states: "I suffer from…" and "My symptoms

5    include…".  (Doc. 24-8 at 1, ¶ 2.)  Although Plaintiff also indicates, "I have had recurrent deep vein

6    thrombosis (blood clots) and post-thrombotic venous insufficiency…" he does not identify when the

7    conditions began.  (*See id.*)  Even assuming the limited e-mail evidence of Plaintiff's diagnoses may

8    be presented in admissible form at trial, the email—from November 2021—does not provide any

9    information as to when the diagnoses were made, such that the Court may find the relevant conditions

10   were present in 2018 and 2020. Also, there is no explanation from a physician as to what affect "deep

11   vein thrombosis (blood clots) and post-thrombotic venous insufficiency" may have on the body, and

12   such information is beyond the scope of knowledge for a layperson.  *See, e.g., Core*, 2020 WL

13   10503190, at *3-4.

14   Moreover, the identified parking placard from the DMV does not offer any assistance in the

15   Court's analysis, as Plaintiff again did not provide any information regarding when the California

16   DMV issued a placard.  The placard attached to Plaintiff's declaration expired in June 2023 (Doc. 24-9

17   at 12), which indicates it was issued in 2021, after the store visits in this action.[3]  Plaintiff did not

18   identify any evidence of possessing a disability parking placard in 2018 and 2020 when he visited

19   Defendants' store, to support a conclusion that he was disabled at the time.

20   On this record, the Court is unable to find that Plaintiff carries the burden to show he was

21   disabled at the relevant times in this action.  As the Central District Court observed, a plaintiff seeking

22   summary judgment on an ADA claim has the burden "to present case of sufficiently-overwhelming

23

24   [3] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir.

25   1993). Judicial notice may be taken of facts on the website of a government agency.  *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information

26   found on the world wide web"); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on the website of a government agency). According to the website of the California Department of Motor

27   Vehicles, parking placards are "[v]alid for two years" and expire on June 30 of every-odd numbered year. Because the Department of Motor Vehicles is a state government agency and the accuracy of the information cannot be questioned, the

28   Court takes judicial noticed of the information provided by the DMV on its website concerning the issuance and expiration of parking placards.

1  strength demonstrating, among other things, that he is disabled within the meaning of the ADA." *Hull*

2  *v. G & M Gapco, LLC,* 2022 WL 2101712, at \*1 (C.D. Cal. Feb. 8, 2022) citing *Roberts v. Royal Atl.*

3  *Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)).  Plaintiff fails to do so here, and is not entitled to summary

4  adjudication of his claim for disability discrimination in violation of the ADA.[4]

5      **B.      Claims under state law and supplemental jurisdiction**

6      Plaintiff also seeks to hold Defendants liable for violations of California's Unruh Act, Cal. Civ.

7  Code § 51 and California's Health & Safety Code.  (*See* Doc. 14 at 10-12.)

8      A court that has original jurisdiction over a civil action "shall have supplemental jurisdiction

9  over all other claims that are so related to claims in the action within such original jurisdiction that they

10  form part of the same case or controversy under Article III of the United States Constitution." 28

11  U.S.C. § 1367(a).  State claims are part of the same case or controversy as federal claims "when they

12  derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be

13  expected to try them in one judicial proceeding." *Kuba v. 1-A Agric. Assoc.*, 387 F.3d 850, 855-56 (9th

14  Cir. 2004) (internal quotation marks, citation omitted).  Notably, the Ninth Circuit concluded ADA and

15  Unruh Act claims that derive from a common nucleus of facts "form part of the 'same case or

16  controversy/ for purposes of § 1367(a)." *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

17      Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right," and district

18  courts "can decline to exercise jurisdiction over pendent claims for a number of valid reasons."  *City of*

19  *Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997) (internal quotation marks, citations

20  omitted).  This discretion is codified under Section 1367(c), which provides a district court may

21  "decline supplemental jurisdiction over a claim" if:

22      (1) the claim raises a novel or complex issue of State law, (2) the claim
        substantially predominates over the claim or claims over which the district
23      court has original jurisdiction, (3) the district court has dismissed all claims
        over which it has original jurisdiction, or (4) in exceptional circumstances,
24      there are other compelling reasons for declining jurisdiction.

25  28 U.S.C. § 1367(c).  This provision is "a codification of the principles of economy, convenience,

26

27  [4] The Court's findings related to disability also address issue of whether Plaintiff had standing to bring his claim under the
    ADA, as Plaintiff did not present any evidence that he was limited in the manner alleged when he visited the 7-Eleven. *See*
28  *Chapman v. Pier 1 Imps. (U.S.), Inc.,* 631 F.3d 939, 955 (9th Cir. 2011).  Therefore, the Court declines to address the
    additional arguments related to standing raised by Defendants in the opposition to summary judgment.  Because the
    evidentiary defects related to standing may be cured, the Court declines to dismiss the ADA claim.

1    fairness, and comity that underlie the Supreme Court's earlier jurisprudence concerning pendent

2    jurisdiction." *Whitaker v. Mac*, 411 F.Supp.3d 1108, 1113 (C.D. Cal. 2019) (citing *City of Chicago v.*

3    *Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997); *see also United Mine Workers v. Gibbs*, 383 U.S.

4    715, 726 (1966) (identifying the following as relevant factors: judicial economy, convenience, fairness,

5    and comity, which together are the "*Gibbs* values").

6          The Ninth Circuit does not require an "explanation for a district court's reasons [for declining

7    supplemental jurisdiction] when the district court acts under the first three provisions." *San Pedro*

8    *Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).  However, the Court is required to

9    identify why circumstances may be "exceptional" when declining jurisdiction under Section

10   1367(c)(4). *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021).  "A district court's decision to

11   decline supplemental jurisdiction over a state-law claim is reviewed for abuse of discretion.*" Vo v.*

12   *Choi*, 49 F.4th 1167, 1171-72 (9th Cir. 2022).

13         A court's inquiry as to whether deny Section 1367(c)(4) involves a two-part inquiry.  *Arroyo*,

14   19 F.4th at 1210.  First, the Court must identify "why the circumstances of the case are exceptional

15   within the meaning of § 1367(c)(4)." *Id.* (citation omitted); *see also San Pedro Hotel*, 159 F.3d at 478-

16   79 (court must explain its reasons for declining jurisdictions under Section 1367(c)(4), but not Sections

17   1367(c)(1)-(3)).  Second, to evaluate whether "there are 'compelling reasons for declining jurisdiction'

18   in a given case, the court should consider what 'best serves the principles of economy, convenience,

19   fairness, and comity which underlie the pendent jurisdiction doctrine' articulated in *Gibbs*." *Arroyo*, 19

20   F.4th at 1210 (citing *Int'l Coll. of Surgeons*, 522 U.S. at 172-73).  The Ninth Circuit indicated these

21   "inquiries are not particularly burdensome." *Id.* (citation omitted.)

22         Significantly, "California adopted heightened pleading requirements for Unruh Act accessibility

23   claims in an attempt to deter baseless claims and vexatious litigation" in 2012.  *Machowski v.*

24   *Auburndale Props.*, 574 F.Supp.3d 776, 779 (C.D. Cal. 2021); *see also Vo*, 49 F.4th at 1170 (noting the

25   state "imposed heightened pleading requirements" following the abuse of remedies under the Unruh

26   Act).  The state adopted further restrictions in 2015, after the heightened pleading requirements alone

27   "did not substantially reduce vexatious filings." *Id.* (citing Cal. Civ. Proc. Code § 425.50).  The state

28   targeted "high-frequency litigants," which the state defined as plaintiffs who "filed 10 or more

1    complaints alleging a construction-related accessibility violation within the 12-month period

2    immediately preceding the filing of the current complaint alleging a construction-related accessibility

3    violation."  Cal. Code Civ. Proc. § 425.55(b)(1).

4            Under the law, high-frequency litigants—such as Plaintiff now appears to be[5]— are now

5    required to comply with the following requirements:

6               (1) the complaint must allege whether it is filed by or on behalf of a high-
                frequency litigator; (2) the number of complaints alleging a construction
7               related accessibility claim that were filed by the high frequency litigator in
                the past twelve months; (3) the reason the high frequency litigator was in
8               the region of the defendant's business; and (4) the specific reason that the
                high frequency litigator desired access to the defendant's business.

9

10   *Malchowski*, 574 F.Supp.3d at 779 (citation omitted, modifications adopted); *see also* Cal. Civ. Proc.

11   Code § 425.50(a)(4)(A)).  The high-frequency litigants must also pay an additional $1,000 filing fee.

12   Cal. Gov't. Code § 70616.5(a), (b).  Importantly, these additional requirements appear to apply only in

13   the state court, and "plaintiffs can circumvent the restrictions on high-frequency litigants by filing their

14   complaints in federal court, asserting federal question jurisdiction over the ADA claim and supplemental

15   jurisdiction over the state-law claims."  *Shalyer v. 1310 PCH, LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022)

16   (citing *Arroyo*, 19 F.4th at 1207); *see also Vo*, 49 F.4th at 1170 ("we assume … these new requirements

17   apply *only* in California state court").

18           The Ninth Circuit—and district courts within the circuit—have recognized an increase in

19   disability access claims brought in federal court by the "high-frequency litigants" who would be subject

20   to the additional requirements before the state.  *See, e.g., Arroyo*, 19 F.4th at 1211; *Shalyer*, 51 F.4th at

21   1017-18 (observing that in the Central District alone, "the number of ADA cases has ballooned from 3

22   percent of its civil docket to roughly 20 percent in recent years"); *Gilbert v. Bonfare Markets, Inc.*,

23

24   [5] The Court acknowledges that Plaintiff did not file more than 10 complaints *before* this action, which seems to be the first
     he filed in the Eastern District after the Covid-19 pandemic. However, in the 12 months following the filing of this
25   complaint, he filed a dozen other disability access actions in the Eastern District, including: *Trujillo v. Ibrahim*, Case No.
     1:21-cv-00311-DAD-HBK (filed Mar. 2, 2021); *Trujillo v. Harsarb Inc*., Case No. 1:21-cv-00342-JLT-SAB (filed Mar. 5,
26   2021); *Trujillo v. Soma Hotel Group, LLC*, Case No. 1:21-cv-00357-SAB (filed Mar. 9, 2021); *Trujillo v. Munoz*, Case No.
     1:21-cv-00476-DAD-EPG (filed Mar. 22, 2021); *Trujillo v. L&S Pizza, Inc*., Case No. 1:21-cv-00549 (filed Mar. 30, 2021);
27   *Trujillo v. Sing*h, Case No. 1:21-cv-01420-DAD-HBK (filed Sept. 24, 2021); *Trujillo v. Taco Riendo Inc*., Case No. 1:21-
     cv-01446-JLT-SAB (filed Sept. 28, 2021); *Trujillo v. Vejar's Inc.*, Case No. 1:21-cv-01467-KES-SKO (filed Sept. 30,
28   2021); *Trujillo v. Villegas Velez*, Case No. 1:21-cv-01469-SAB (filed Sept. 30, 2021); *Trujillo v. 4B Market Incorporated*,
     Case No. 1:21-cv-01559-JLT-HBK (filed Oct. 22, 2021); *Trujillo v. Malwa Food Mart Inc*., Case No. 1:21-cv-01580-AWI-
     BAM (filed Oct. 25, 2021); and *Trujillo v. Barboza*, Case No. 1:21-cv-01691-KES-BAM (filed Nov. 24, 2021).

1   2023 WL 1803398, at *4 (E.D. Cal. Feb. 7, 2023) (noting "the burden the ever-increasing number of

2   [accessibility] cases poses to the federal courts"); *Arroyo v. Quach, Inc.*, 2022 U.S. Dist. LEXIS 73567,

3   at *3 (N.D. Cal. Apr. 12, 2022) ("California federal courts have experienced a large influx of cases

4   involving a federal claim under the ADA for failure to ensure that businesses are accessible to

5   customers with disabilities, alongside a state-law claim under the Unruh Act").  The Ninth Circuit

6   attributed this increase to Unruh Act plaintiffs who sought to avoid the California requirements, "by

7   filing in a federal forum in which [they] can claim these state law damages in a manner inconsistent

8   with the state law's requirements."  *Arroyo*, 19 F.4th at 1211.  As a result, the Ninth Circuit opined "the

9   procedural strictures that California put in place have been rendered largely toothless..."  *Id.*

10          Having acknowledged the apparent avoidance by litigants who pursue their state claims in

11  federal courts, the Ninth Circuit had "little difficulty" reaching the conclusion that "the legal landscape"

12  concerning Unruh Act cases constitutes an exceptional circumstance within the meaning of Section

13  1367(c)(4).  *Vo*, 49 F.4th at 1169 (citing *Arroyo*, 19 F.4th at 1214).  Importantly, however, denying

14  supplemental jurisdiction a late stage in the litigation does not effectuate the values of judicial

15  economy, conveniences, fairness, and comity.  *Arroyo*, 19 F.4th at 1215-16.  On the other hand,

16  denying supplemental jurisdiction over an Unruh Act claim "well before … rul[ing] on the merits of the

17  ADA claim" is consistent with the *Gibbs* values, particularly comity.  *Vo,* 49 F.4th at 1172-73.

18          The legal landscape addressed by the Ninth Circuit in *Arroyo*, *Vo*, and *Shalyer* demonstrate that

19  exceptional circumstances exist with the "high-frequency" litigants avoiding the additional pleading

20  requirements—and filing fee—mandated under state law by proceeding before the federal court with

21  claims arising under the Unruh Act.  The resulting increase in disability access cases has burdened the

22  courts.  Indeed, the Eastern District of California remains under a state of judicial emergency, and an

23  increase in disability access cases strains its already limited judicial resources.  Thus, the Court finds

24  there are "exceptional circumstances" for declining supplemental jurisdiction.

25          Moreover, the Court finds the *Gibbs* values of judicial economy and convenience weigh in

26  favor of declining supplemental jurisdiction over the state law claims.  Although the Court addressed

27  the merits of the ADA claim to the limited extent necessary to address the motion for summary

28  judgment, it has not been required to expend a significant amount of time and resources on the merits

12

1    of the action given Plaintiff's failure to present evidence on the threshold element for his ADA claim.

2    Moreover, any inefficiencies created by the Court's decision to decline supplemental jurisdiction "are

3    problems ultimately that resulted from [the] plaintiff's decision to file this [a]ction in federal, rather

4    than state court." *See Whitaker v. Aftaliion*, 2020 WL 5845724, at *4 (C.D. Cal. July 23, 2020).

5          Fairness also weighs in favor of declining supplemental jurisdiction over the claims arising

6    under Unruh Act and California's Health and Safety Code.  Plaintiff will not be prevented from

7    receiving injunctive relief to remove the encountered accessibility barriers —the only relief available—

8    under his ADA claim, if he is able to establish his claim at trial.

9          Finally, comity weighs in favor of declining jurisdiction, particularly in light of the state's

10   efforts to thwart abuse of the legal system through the filing of unverified disability access claims.  *See,*

11   *e.g., Arroyo,* 19 F.4th at 1215-1216 (acknowledging important comity interests, and indicating that "[i]f

12   the district court had declined supplemental jurisdiction over Arroyo's Unruh Act claim at the outset of

13   the litigation, it might then still have been possible to further California's interest in cabining Unruh

14   Act damages claims"); *Marquez v. KBSM Hospitality Corp.*, 492 F.Supp.3d 1058, 1064 (C.D. Cal.

15   2020) ("To allow federal courts to become an escape hatch that allows high-frequency litigants to

16   pursue such claims without satisfying California's requirements is an affront to the comity between

17   federal and state courts"); *Garcia v. Maciel*, 2022 WL 395316, at *5 (N.D. Cal. Feb. 9, 2022) (where

18   the case had "not progressed beyond threshold questions," comity weighed in favor of declining

19   supplemental jurisdiction).  To the extent addressing supplemental jurisdiction at this juncture is

20   inefficient, the Court finds the inefficiency is outweighed by the interest of comity.  *See Schutza v.*

21   *Alessio Leasing, Inc.*, 2019 WL 1546950, at *4 (S.D. Cal. Apr. 8, 2019) ("By being 'inefficient' and

22   declining to exercise supplemental jurisdiction …, this Court is simply recognizing that California has a

23   strong interest in interpreting and enforcing its own rules without federal courts serving as a convenient

24   end-around for creative litigants.  If that results in occasional inefficiency, it's a worthwhile tradeoff.").

25         Because there are "exceptional circumstances" and "compelling reasons" as described above,

26   the Court now exercises its discretion to decline supplemental jurisdiction over Plaintiff's state law

27   claims pursuant to Section 1367(c)(4).

28   ///

**V.      Conclusion and Order**

  Plaintiff fails to carry his burden as a moving party to show he is entitled to summary judgment on his claim arising under the ADA.  In addition, the Court now exercises its discretion to decline supplemental jurisdiction over the claims arising under state law.  Thus, the Court **ORDERS:**

  1. Summary adjudication the first cause of action for a violation of the Americans with Disabilities Act is **DENIED**.

  2. The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(c)(4).

  3. Plaintiff's claims for violations of the Unruh Act and the California Health & Safety Code are **DISMISSED** without prejudice.

  4. The parties are directed to file a joint status report within 21 days that addresses what, if any, proceedings the parties believe to be required prior to setting a trial date; the length of trial requested; and indicating parties' trial date availability.

IT IS SO ORDERED.

 Dated:   __**March 29, 2024**__                    _____
                  UNITED STATES DISTRICT JUDGE